**FIRST DIVISION**
**BARNES, P. J.,**
**BROWN and HODGES, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**March 9, 2023**

# In the Court of Appeals of Georgia

A22A1359. YORK d/b/a YORK BUILDERS v. MOORE.

HODGES, Judge.

Homeowner Margaret Moore sued general contractor Tommy York d/b/a York Builders ("York") for damages arising from a fire that occurred during the renovation of Moore's residence, and York appeals from the Superior Court of Rabun County's order denying his motion for summary judgment. He argues primarily that the trial court erred in finding that the record did not contain evidence necessary to determine whether an exception to the general rule of non-liability for general contractors for the acts of independent contractors applies. See OCGA § 51-2-5 (3). Because we conclude that Moore failed to present any evidence, in response to York's summary judgment motion, of an express contract between the parties that would trigger the exception, we reverse.

Our standard of review of well-settled:

> in reviewing the denial of a motion for summary judgment, we apply a de novo standard of review, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant.

(Citation and punctuation omitted.) *Tift Reg. Med. Center Foundation v. GEICO Gen. Ins. Co.*, 357 Ga. App. 235 (850 SE2d 443) (2020). So viewed, the record demonstrates that Moore owned a vacation residence in Lakemont, Georgia. At some point, Moore retained York to perform renovations to the residence; it is undisputed that there was no written contract between the parties.[1] During the renovation process, either Moore or York hired Jeff Gosnell Painting ("JGP") to perform painting and staining work at the residence.[2]

---

[1] York had performed work for Moore on multiple prior occasions.

[2] This fact is the subject of considerable disagreement between the parties. Moore deposed that she knew York was a general contractor who hired subcontractors to perform certain work, stating that "if he doesn't do it himself, then he" has someone else do the work. And Moore also testified that JGP "was an independent subcontractor. . . . [H]e was referred to me by [York]. I didn't work out a deal with [JPG], so he came through [York]." Although Moore initially deposed that she did not know who hired JGP, she later submitted an affidavit, in response to York's summary judgment motion, asserting that York hired JGP; Moore blamed chemotherapy and resulting lapses in memory as the reason for her differing testimony. Testimony from the fire investigator also indicated that York and "his

2

On September 17, 2019, a fire erupted at the base of a stairway inside the residence, resulting in damage to floor joists and a crawlspace, as well as soot buildup throughout the residence. Subsequent investigation of the cause of the fire suggested that a soiled drop cloth, oily rags, or similar material had been left in a pile inside the residence, resulting in spontaneous combustion. JGP had been performing painting and staining work on the stairway shortly before the fire.

Moore sued York, as the general contractor, asserting causes of action for negligence, breach of contract, and attorney fees and expenses. York moved for summary judgment, arguing that it was not responsible for JPG's work as an independent contractor and that two exceptions to that general rule — that a general contractor may be liable for the work of an independent contractor "if the employer retains the right to direct or control the time and manner of executing the work or interferes and assumes control so as to create the relation of master and servant" (OCGA § 51-2-5 (5)) or "if the wrongful act is the violation of a duty imposed by

crew" and employees had been staining a stairway. While Moore's husband initially claimed that York hired JGP, he later stated that he would not dispute JGP's testimony that it had been hired by Moore. Gosnell testified that Moore hired JGP, that JGP worked as an independent contractor, that Moore selected the paint and stain colors and communicated them directly to JGP, and that JGP was subject to "Moore's direction and/or control, if any, on this . . . job." In reviewing the record in a light most favorable to Moore as the nonmovant, we will presume that York hired JGP.

3

*express contract* upon the [general contractor]" (OCGA § 51-2-5 (3); emphasis supplied) — did not apply.[3] The trial court denied York's motion, finding that certain fact issues precluded summary judgment, including who actually hired JPG and the nature of the agreement between Moore and York.[4] The trial court granted York a certificate of immediate review, and we granted York's application for interlocutory appeal. This appeal follows.

1. York first contends that the trial court erred in ruling that the record did not contain evidence necessary to determine whether an exception to the general rule of non-liability for general contractors for the acts of independent contractors applies. We agree.

Under Georgia law,

summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Where a defendant moving for summary judgment discharges this burden, the

---

[3] Although York's initial basis for summary judgment was the exception codified at OCGA § 51-2-5 (5), Moore's argument in response focused on OCGA § 51-2-5 (3); York also cited OCGA § 51-2-5 (3) in its reply brief.

[4] Importantly, the trial court's order relied upon OCGA § 51-2-5 (3) alone to reach its conclusions and, in fact, never even cited OCGA § 51-2-5 (5).

4

nonmoving party cannot rest on [her] pleadings, but rather must point to specific evidence giving rise to a triable issue.

(Citation and punctuation omitted.) *Farid v. Gaskell*, 366 Ga. App. 7, 8 (880 SE2d 576) (2022); see also OCGA § 9-11-56 (e).

As a general matter, "employers are not responsible for torts committed by independent contractors." *Watkins v. First South Utility Constr.*, 284 Ga. App. 547, 549 (644 SE2d 449) (2007); see also OCGA § 51-2-4 ("An employer generally is not responsible for torts committed by his employee when the employee exercises an independent business and in it is not subject to the immediate direction and control of the employer."). Exceptions to this general rule are codified at OCGA § 51-2-5, including, relevant to this appeal, where "the wrongful act is the violation of a duty imposed by *express contract* upon the employer[.]" (Emphasis supplied.) OCGA § 51-2-5 (3); see also *Watkins*, 284 Ga. App. at 549. "This provision has been interpreted as requiring an express obligation by the employer to be responsible for the independent contractor's conduct." *Toys 'R' Us v. Atlanta Economic Dev. Corp.*, 195 Ga. App. 195, 196 (1) (A) (393 SE2d 44) (1990). Moreover, "our cases which have construed the statutory exception in [OCGA § 51-2-5 (3)] have emphasized the word 'express[.]'" (Citation and punctuation omitted.) *Watkins*, 284 Ga. App. at 549.

In this case, there is no evidence of an oral or written agreement which could satisfy the requirement for an "express contract" to hold York liable for JGP's alleged negligence. See OCGA § 51-2-5 (3). At the outset, it is undisputed that there is no written contract between the parties. However, "an enforceable contract may exist even though it rests only in words as remembered by witnesses." (Citation and punctuation omitted.) *Campbell v. Ailion*, 338 Ga. App. 382, 386 (1) (790 SE2d 68) (2016); see also OCGA § 13-1-5 (b). Whether oral or written, "a valid contract includes three elements: subject matter of the contract, consideration, and mutual assent by all parties to all contract terms." (Citation and punctuation omitted.) *Campbell v. The Landings Assn.*, 311 Ga. App. 476, 480 (1) (716 SE2d 543) (2011); see also OCGA § 13-3-1; *Turner Broadcasting Sys. v. McDavid*, 303 Ga. App. 593, 597 (1) (693 SE2d 873) (2010) ("Even complex or expensive contracts may be oral, as long as the evidence establishes the parties' mutual assent to all essential terms of the contract.").

In her complaint, Moore alleged that "York entered into a contract with [her] for renovations to [her] home." Moore also asserted that "York agreed that it would perform its work, in a good and workmanlike manner, and free of all defects." York moved for summary judgment, initially arguing that OCGA § 51-2-5 (5) precluded

Moore's claim because York did not retain "the right to direct or control the time and manner of executing the work or [interfere] and [assume] control so as to create the relation of master and servant. . . ." However, in a reply to Moore's response to its summary judgment motion in which she relied upon OCGA § 51-2-5 (3), York also cited OCGA § 51-2-5 (3) and argued that Moore and York "did not enter into any 'express contract' but a verbal agreement that . . . York would be the general contractor for the renovation project." Moore did not attempt to introduce any evidence in response to York's reply.

Therefore, the record does not contain a written contract between the parties, express or otherwise, for York to be liable for the work of JPG. Nor does the record contain evidence of an oral contract between the parties, express or otherwise, for York to be liable for the work of JPG. Although Moore pled that "York entered into a contract with [her] for renovations to [her] home" and that "York agreed that it would perform its work, in a good and workmanlike manner, and free of all defects[,]" these assertions bear none of the hallmarks of a contract.[5] See OCGA § 13-

---

[5] Recognizing this dearth of evidence, the trial court noted that "[t]here is no evidence in the record as to the details of the agreement between the parties. Furthermore, the record is silent as to the scope of the renovations as well as the terms for payment. There is also no reference as to which of the parties paid JPG. . . ."

3-1; *Campbell*, 311 Ga. App. at 480 (1). When York noted the absence of an express contract for it to assume the liability for JPG, which would be essential to Moore's claim that York is liable for JGP's alleged negligence, it was incumbent upon Moore to present evidence of such a contract to overcome York's summary judgment motion. This, she failed to do. As a result, York was entitled to judgment as a matter of law, and it follows that the trial court erred in denying York's summary judgment motion due to Moore's failure to come forward with rebuttal evidence after the burden shifted to her. See generally OCGA § 9-11-56 (e); *Farid*, 366 Ga. App. at 8; *Kelly v. Pierce Roofing Co.*, 220 Ga. App. 391, 392-393 (2) (469 SE2d 469) (1996) ("Once the movant has made a prima facie showing that it is entitled to judgment as a matter of law, the burden shifts to the respondent to come forward with rebuttal evidence.") (citation and punctuation omitted). We therefore reverse the trial court's order.[6]

---

[6] It is true that we have held that a residential "*builder-seller*" that "holds himself out as having the ability and expertise to build and fit a workmanlike residence . . . cannot escape liability simply by claiming that an independent contractor he hired was wholly responsible for the negligent work." (Emphasis supplied.) *Stancliff v. Brown & Webb Builders, Inc.* 254 Ga. App. 224, 225 (561 SE2d 438) (2002). However, there is no evidence in the record that York qualified as a "builder-seller" or that he held himself out in a similar manner.

8

2. York further requests that we resolve a purported conflict between *Faubion v. Piedmont Engineering & Constr. Corp.*, 178 Ga. App. 256 (342 SE2d 718) (1986) on the one hand and *Toys 'R' Us v. Atlanta Economic Dev. Corp.*, 195 Ga. App. 195 (393 SE2d 44) (1990) and *French v. Sinclair-Oconee Homes of Milledgeville*, 289 Ga. App. 696 (658 SE2d 226) (2008) on the other. To the extent a conflict exists at all, "[b]ecause we are able to decide this case on a narrower basis [in Division 1], we do not reach the broader issues." *Crenshaw v. Crenshaw*, 267 Ga. 20 (471 SE2d 845) (1996); see also *Van Omen v. Lopresti*, 357 Ga. App. 9, 13 (2) (849 SE2d 758) (2020) (noting that, despite decision addressing court-created conflict of long standing, "[d]eclining to resolve a conflict when a resolution is unnecessary to decide the case is appropriate"); *Moore v. McKinney*, 335 Ga. App. 855, 857 (2) (783 SE2d 373) (2016) ("[T]he cardinal principle of judicial restraint — if it is not necessary to decide more, it is necessary not to decide more — counsels us to go no further.") (citation and punctuation omitted).

*Judgment reversed. Barnes, P. J., and Brown, J., concur*.